**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TWIN PAK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | **(Jury Demand Endorsed Hereon)** |
| JOHN D. RUSSELL, and | ) | |
| J.D. RUSSELL HAY & STRAW, INC. | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Twin Pak, LLC ("**Twin Pak**") submits this Complaint against Defendants John D. Russell ("**Russell**") and J.D. Russell Hay & Straw, Inc. ("**J.D. Russell Hay & Straw**" and collectively with Russell, "**Defendants**") for infringement of U.S. Patent No. 12,256,676 (the "'**676 Patent**") and U.S. Patent No. 10,869,428 (the "'**428 Patent**") (collectively the "**Patents-in-Suit**") and alleges as follows.

### NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* Twin Pak seeks injunctive relief, compensatory damages in an amount no less than a reasonable royalty, lost profits, enhanced damages for willful infringement, pre- and post-judgment interest, and attorneys' fees and costs.

2. Twin Pak's founder and the named inventor on the Patents-in-Suit, Jason Grady, solved a problem the small-square hay baling industry had long failed to solve: how to produce two small-square bales simultaneously in a single bale chamber, more than doubling the per-machine output without sacrificing the quality of the hay bales produced.

3. Mr. Grady's solution—a vertically-oriented stationary splitting knife extending

1

through a double-wide bale chamber—is protected by the '676 Patent and is embodied in Twin Pak's commercial double balers.

4. Creating two bales at the same time required a different approach to how the bales are discharged. Recovering two discharged bales at the same time with modern hay stacking equipment requires space between the bales. If the bales are separated from each other from side to side, they can be picked up, but the hay stacking equipment may be required to make two passes to get each bale. Mr. Grady realized that the best course would be to delay the discharge of one of the bales created by his double baler so that the discharged bales formed a single line, allowing the hay stacking equipment to pick bales up in one pass. Mr. Grady's invention of a double baler with a splitting knife and a delayed discharge is embodied in TwinPak$^{TM}$ balers and protected by the '428 Patent.

5. Defendant Russell admitted he tried to make a double baler. Vogel Engineering built Defendant Russell's original double baler. Defendant Russell's double baler had two bale chambers rather than one with a splitting knife. His attempt was a failure and was abandoned.

6. Defendant Russell told Mr. Grady that he was interested in buying one or more TwinPak$^{TM}$ baler to persuade Mr. Grady to disclose his invention to Defendant Russell. Believing he had a new customer, Mr. Grady agreed to show Defendant Russell his innovative double baler with a splitting knife in a single baling chamber. Defendant Russell came to Twin Pak's facility in New Mexico with Mr. Vogel. Mr. Grady assumed Mr. Vogel helped Defendant Russell harvest hay. Unbeknownst to Mr. Grady, Mr. Vogel was actually Defendant Russell's failed baler builder. Rather than being an interested customer, Defendant Russell was a copyist intent on stealing Twin Pak's innovative solution to the problem Defendant Russell and Mr. Vogel could not solve. After learning how Twin Pak's baler worked, Defendants copied Twin Pak's double baler design.

2

Defendants used the infringing copies to bale hay at their property in Ohio.

7. Defendants' infringement is intentional and willful.

### PARTIES, JURISDICTION, AND VENUE

8. Plaintiff Twin Pak, LLC is a New Mexico limited liability company with its principal place of business at 1515 W Murray Dr., Farmington, New Mexico. Twin Pak designs, manufactures, and sells double balers practicing the '676 Patent and the '428 Patent.

9. On information and belief, Defendant Russell is an individual residing at 7187 Devils Hole Road, Pemberville, Ohio.

10. Defendant J.D. Russell Hay & Straw, Inc. is incorporated in Ohio and has its principal place of business at 7187 Devils Hole Road, Pemberville, Ohio.

11. Defendants have used the infringing copies and sold at least one infringing copy of Twin Pak's baler in this jurisdiction.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

13. This Court has personal jurisdiction over Defendants because, among other things, Defendant Russell resides in this District, J.D. Russell Hay & Straw maintains a continuous and systematic physical presence in this District, regularly conducts and solicits business in this District, and both have committed acts of infringement in this District.

14. Venue is proper pursuant to 28 U.S.C. § 1400(b) because Defendants have committed acts of infringement in this District, J.D. Russell Hay & Straw has a regular and established place of business in this District and Defendant Russell resides in this District. Defendants further committed acts of infringement in this District by selling at least one infringing baler in this District.

**FACTUAL BACKGROUND**

15.     Small-square hay bales have been a fixture of American agriculture for nearly a century. They are valuable because end users can handle them by hand and ship them efficiently in conventional vans and containers without the need for specialized or industrial-scale farming equipment.

16.     Small-square bales command a market premium over larger bales. Historically, however, that premium was offset by the disproportionate cost of producing them, as a single small-square baler could process only a fraction of the tonnage of a large-square baler in the same amount of time, requiring more machines, more operators, more fuel, and more time per ton harvested.

17.     The window for harvesting high-quality hay is narrow—often only a few hours per day—making baler speed and capacity a direct determinant of crop quality and profitability.

### *Mr. Grady's Invention and the Patents-in-Suit*

18.     Mr. Grady is a lifelong hay harvester. He grew up in the hay fields of his family's custom-baling operation and has spent his career working with, modifying, and improving balers.

19.     Mr. Grady conceived of placing a stationary vertical splitting knife at the midpoint of a double-wide bale chamber, oriented at a right angle to the lateral axis of the bale chamber floor and parallel to the chamber's vertical side walls. As the plunger advanced, crop material would be pushed past the splitting knife, forming two square bales on opposing sides of the knife.

20.     Mr. Grady's invention is described and claimed in the '676 Patent entitled Baling Apparatus and Method and in the '428 Patent, which is also entitled Baling Apparatus and Method. Both were duly and lawfully issued by the U.S. Patent and Trademark Office on March 25, 2025, and December 22, 2020, respectively. A true and correct copy of the '676 Patent is attached as

**Exhibit 1**. A true and correct copy of the '428 Patent is attached as **Exhibit 2**.

21.     The '676 Patent and the '428 Patent claim priority to an application filed on July 2, 2018.

22.     Twin Pak is the owner by assignment of all right, title, and interest in and to the '676 Patent and the '428 Patent, including the exclusive right to sue for and recover damages for past, present, and future infringement. A true and correct copy of the assignment is attached as **Exhibit 3**.

### Twin Pak's Commercialization

23.     Twin Pak began commercial sales of its 3-tie double balers in 2019. A 3-tie baler ties three loops of twine around the compressed crop material before the resulting bale is ejected from the baler.

24.     Twin Pak introduced its 2-tie TwinPak$^{TM}$ double baler in 2023. A 2-tie bale is bound by two loops of twine and weighs about half as much as a 3-tie bale.

25.     Twin Pak's balers are marked with the '676 Patent and the '428 Patent in compliance with 35 U.S.C. § 287.

26.     Twin Pak has not licensed the '676 Patent or the '428 Patent to any third party.

27.     Instead, Twin Pak has invested in engineering, tooling, and assembly-line capacity at its Farmington, New Mexico facility to make its 2-tie balers. Twin Pak's 3-tie balers are built by a third party in Oregon.

28.     A photograph of Twin Pak's current balers is reproduced below.



29.     Twin Pak distributes its balers through a strategic partnership with John Deere (Deere & Company).

### Defendant's Copying

30.     In around September 2019, Defendant Russell visited Mr. Grady in Farmington with his son and Mr. Vogel. Defendant Russell represented to Mr. Grady that he had a haying operation in Ohio and told Mr. Grady that he was interested in buying the first TwinPak™ 2-tie baler. Mr. Grady entertained Defendant Russell because he saw him as a potential customer. Defendant Russell arranged the visit. Mr. Grady didn't expect that Defendant Russell would bring others to help evaluate the purchase of Twin Pak's baler. Mr. Grady assumed Defendant Russell's son and Mr. Vogel helped Defendants with their hay operation. Mr. Grady learned that Mr. Vogel was Defendant Russell's baler builder only after Defendants had copied Twin Pak's patented design.

31.     Mr. Grady pulled a TwinPak™ baler out of the shop and took it to a field to show Defendant Russell how it worked. Mr. Grady baled a hundred or two hundred bales while

6

Defendant Russell and his team observed.

32. Defendant Russell complimented Mr. Grady on the squareness of the bales produced and seemed very excited about TwinPak$^{TM}$'s baler. Mr. Grady took Defendant Russell's excitement as an indicator that he recognized Twin Pak had created something that had never successfully been done before and that would change the small bale industry.

33. Mr. Grady told Mr. Russell that he had applied for patent protection for his inventions.

34. Defendant Russell, his son, and Mr. Vogel spent considerable time inspecting every aspect of the TwinPak$^{TM}$ baler.

35. Defendant Russell tried to create a double baler before he copied Twin Pak's patented technology. Defendant Russell failed—he even referred to his prototype as "bleeding edge technology." *See* https://youtu.be/DDYzOwz_008?t=1173 (last accessed July 28, 2026).

36. After inspecting Twin Pak's baler under false pretenses, Defendant Russell was able to copy what they saw and, with the help of Mr. Vogel, made several copies of the claimed inventions ("**Defendants' Balers**").

37. After learning that Defendant Russell had copied his invention, Mr. Grady called him. On the call, Mr. Grady reminded Defendant Russell that his patent application was pending that would protect the splitting knife design, and demanded that Defendant Russell stop copying his idea, namely, using a splitting knife in the bale chamber to create two bales at the same time. Defendant Russell responded that the idea "was too good to not be available to everyone."

38. On information and belief, Defendants sold at least one of their infringing balers to AGCO Corporation, a significant manufacturer of agricultural equipment, after the '428 Patent issued.

7

39. On information and belief, Defendants have used their infringing balers after the '428 Patent issued.

40. On information and belief, Defendants have used their infringing balers after the '676 Patent issued.

41. Twin Pak does not license the '676 Patent or the '428 Patent and has, instead, elected to enforce its exclusive rights. Monetary damages alone are inadequate to remedy the ongoing irreparable harm to Twin Pak's business, reputation, customer relationships, and dealer network.

## CLAIMS FOR RELIEF

**Count 1**
**Violation of 35 U.S.C. § 271(a)**
Infringement of U.S. Patent No. 12,256,676
*Against all Defendants*

42. Twin Pak incorporates the preceding paragraphs as if fully set forth herein.

43. The Defendants directly infringed and continue to directly infringe Claim 1 of the '676 Patent by making, using, offering to sell, selling, and/or importing the Defendants' Balers within the United States during the term of the '676 Patent in violation of 35 U.S.C. § 271(a).

44. The Defendants' Balers practices each and every limitation of Claim 1 of the '676 Patent.

45. The Defendants' Balers simultaneously form multiple square bales of crop material picked up from a field. *See* **Exhibit 4**, Figs. 1, 10-15 (Exhibit 4 are true and correct copies of images of Defendants' Balers submitted to the United States Patent Office by Defendant Russell as part of Provisional Application No. 63/289,182 filed on December 14, 2021).

46. Defendants' Balers have a stationary splitting knife mounted in the baling chamber that extends vertically from the floor of the baling chamber, and the plunger of Defendants' Balers

push the crop material past the splitting knife to form bales of the crop material spaced by the splitting knife without requiring movement of the splitting knife. The splitting knife is designated in Ex. 4's Figures 5, 6A, 6B, and 7 with reference number 40.

47. On information and belief, the splitting knife of the Defendants' Balers has a leading cutting edge and opposing vertical cutting edges tapering to the leading cutting edge. The leading cutting edge extends vertically from the floor of the baling chamber and is transverse to the flow path of the crop material being baled. *See* Ex. 4's Figures 5, 6A, 6B, and 7.

48. On information and belief, the splitting knife of the Defendants' Balers extends through a gap between spaced members of the floor of the baling chamber and the top portion of the splitting knife is mounted to a support at the same level as the spaced members of the roof of the baling chamber. *See* Ex. 4's Figures 5, 6A, 6B, and 7.

49. To the extent any limitation of Claim 1 is not literally met by the Defendants' Balers, the Defendants' Balers infringe under the doctrine of equivalents because any such difference is insubstantial and the Defendants' Balers performs substantially the same function in substantially the same way as to achieve substantially the same result as the claimed invention.

50. The Defendants' infringement has caused, and unless enjoined, will continue to cause substantial and irreparable harm to Twin Pak for which there is no adequate remedy at law.

**Count 2**
**Willful Infringement**
Infringement of U.S. Patent No. 12,256,676
*Against All Defendants*

51. The Defendants' infringement of Claim 1 of the '676 Patent has been, and continues to be, willful, deliberate, and egregious.

52. Defendant Russell inspected Twin Pak's balers and copied Twin Pak's splitting knife invention that is claimed in the '676 Patent.

53.      Mr. Grady twice told Defendant Russell that Twin Pak was pursuing patent protection for the idea he stole from Twin Pak.

54.      The Defendants either knew of the '676 Patent and willfully infringed the patent or they callously disregarded Twin Pak's patent rights and chose to be willfully blind to those rights. In either case, Defendants' infringement was willful.

55.      The Defendants' conduct evinces a deliberate and conscious decision to copy Twin Pak's patented invention and to free ride on Twin Pak's investment. The Defendants' conduct warrants enhanced damages under 35 U.S.C. § 284 and a finding that this is an exceptional case under 35 U.S.C. § 285.

**Count 3**
**Injunctive Relief Pursuant to 35 U.S.C. § 283**
Infringement of U.S. Patent No. 12,256,676
*Against all Defendants*

56.      Twin Pak incorporates the preceding paragraphs as if fully set forth herein.

57.      Under 35 U.S.C. § 283, this Court may grant injunctions in accordance with the principles of equity to prevent the violation of rights secured by patent on such terms as the Court deems reasonable.

58.      The Defendants' continued manufacture, use, offer for sale, sale, and/or importation of the Defendants' Balers, and any product no more than colorably different therefrom, violates Twin Pak's rights in the '676 Patent and will continue to cause Twin Pak irreparable harm unless enjoined.

59.      Twin Pak has no adequate remedy at law because Defendants' infringement threatens Twin Pak's market share, pricing, customer relationships, goodwill, dealer relationships, and ability to continue commercializing its patented technology.

60.      The balance of hardships favors Twin Pak because the Defendants have no

10

legitimate interest in continuing to infringe the '676 Patent, whereas Twin Pak will suffer continuing and irreparable injury absent injunctive relief.

61. The public interest favors enforcement of valid patent rights and supports an injunction preventing further infringement of Claim 1 of the '676 Patent.

62. Twin Pak is therefore entitled to preliminary and permanent injunctive relief enjoining Defendants and all persons acting in concert with them from further infringement of Claim 1 of the '676 Patent.

**Count 4**
**Violation of 35 U.S.C. § 271(a)**
Infringement of U.S. Patent No. 10,869,428
***Against all Defendants***

63. Twin Pak incorporates the preceding paragraphs as if fully set forth herein.

64. The Defendants directly infringed, and continue to directly infringe, Claims 1, 4-12, 14, 16 and 18 of the '428 Patent by making, using, offering to sell, selling, and/or importing the Defendants' Balers within the United States during the term of the '428 Patent in violation of 35 U.S.C. § 271(a).

65. The Defendants' Balers practice each and every limitation of Claims 1, 4-12, 14, 16 and 18 of the '428 Patent. Claim 14, without limitation, is illustrative and is addressed in some detail in the paragraphs below.

66. As required by Claim 14, the Defendants' Balers pick up crop material and deliver the crop material to a pickup chamber. *See* Ex. 4, Fig. 6A.

67. The Defendants' Balers push the crop material into the baling chamber with a plunger that forces the crop material past a splitting knife that center splits the crop flow such that flakes of the crop are simultaneously formed on opposing sides of the splitting knife. *See* Exhibit 4, Figs. 6A, 6B and 7.

11

68. The Defendants' Balers tie the crop material to simultaneously form a first and second square bale in the baling chamber. *See* Ex. 4, Figs. 10-15.

69. The Defendants' Balers discharge the bales simultaneously from the baling chamber but eject the bales in a longitudinally spaced relation to each other via an ejection chute to form the ejected bales in a longitudinal line and the bales are ejected at staggered times by delaying the ejection of one of the bales. *See* Ex. 4, Figs. 10-15, https://youtu.be/Kv1S2H-xiJk (last accessed July 29, 2026).

70. To the extent any limitation of Claim 14 is not literally met by the Defendants' Balers, the Defendants' Balers infringes under the doctrine of equivalents because any such difference is insubstantial and the Defendants' Balers performs substantially the same function in substantially the same way as to achieve substantially the same result as the claimed invention.

71. The Defendants' infringement has caused, and unless enjoined will continue to cause, substantial and irreparable harm to Twin Pak for which there is no adequate remedy at law.

**Count 5**
**Willful Infringement**
Infringement of U.S. Patent No. 10,869,428
*Against all Defendants*

72. Twin Pak incorporates the preceding paragraphs as if fully set forth herein.

73. The Defendants' infringement of Claims 1, 4-12, 14, 16 and 18 of the '428 Patent has been, and continues to be, willful, deliberate, and egregious.

74. Defendant Russell inspected Twin Pak's balers and copied Twin Pak's dual baler invention that is claimed in the '428 Patent.

75. Mr. Grady twice told Defendant Russell that Twin Pak was pursuing patent protection for the idea he stole from Twin Pak.

76. The Defendants either knew of the '428 Patent and willfully infringed the patent,

12

or they callously disregarded Twin Pak's patent rights, and chose to be willfully blind to those rights. In either case, the Defendants' infringement was willful.

77.     The Defendants' conduct evinces a deliberate and conscious decision to copy Twin Pak's patented invention and to free ride on Twin Pak's investment. Defendants' conduct warrants enhanced damages under 35 U.S.C. § 284 and a finding that this is an exceptional case under 35 U.S.C. § 285.

**Count 6**
**Indirect Infringement**
Infringement of U.S. Patent No. 10,869,428
*Against all Defendants*

78.     Twin Pak incorporates the preceding paragraphs as if fully set forth herein.

79.     The Defendants actively induced infringement of Claims of the '428 Patent under 35 U.S.C. § 271(b) by, among other things, instructing and encouraging AGCO to use Defendants' Baler in a manner that infringes Claims 1, 4-12, 14, 16 and 18 of the '428 Patent.

80.     The Defendants acted with knowledge that the induced acts constitute infringement of the '428 Patent or were willfully blind to the '428 Patent and its infringement.

**Count 7**
**Injunctive Relief Pursuant to 35 U.S.C. § 283**
Infringement of U.S. Patent No. 10,869,428
*Against all Defendants*

81.     Twin Pak incorporates the preceding paragraphs as if fully set forth herein.

82.     Under 35 U.S.C. § 283, this Court may grant injunctions in accordance with the principles of equity to prevent the violation of rights secured by patent on such terms as the Court deems reasonable.

83.     The Defendants' continued manufacture, use, offer for sale, sale, and/or importation of the Defendants' Balers, and any product no more than colorably different therefrom,

violates Twin Pak's rights in the '428 Patent and will continue to cause Twin Pak irreparable harm unless enjoined.

84. Twin Pak has no adequate remedy at law because Defendants' infringement threatens Twin Pak's market share, pricing, customer relationships, goodwill, dealer relationships, and ability to continue commercializing its patented technology.

85. The balance of hardships favors Twin Pak because Defendants have no legitimate interest in continuing to infringe the '428 Patent, whereas Twin Pak will suffer continuing and irreparable injury absent injunctive relief.

86. The public interest favors enforcement of valid patent rights and supports an injunction preventing further infringement of Claims 1, 4-12, 14 16 and 18 of the '428 Patent.

87. Twin Pak is therefore entitled to preliminary and permanent injunctive relief enjoining the Defendants and all persons acting in concert with them from further infringement of Claims 1, 4-12, 14 16 and 18 of the '428 Patent.

**REQUEST FOR RELIEF**

Twin Pak respectfully requests that this Court enters judgment in its favor and against Defendants as follows:

A. A judgment that the Defendants have directly infringed Claim 1 of the '676 Patent;

B. A judgment that the Defendants' infringement of Claim 1 of the '676 Patent has been willful;

C. A permanent injunction enjoining the Defendants, and all those acting in concert with them, from further infringement of Claim 1 of the '676 Patent, including making, using, offering to sell, selling, or importing the

14

Defendants' Balers or any product no more than colorably different therefrom;

D.    A judgment that the Defendants have directly infringed and induced infringement of Claims 1, 4-12, 14 16 and 18 of the '428 Patent;

E.    A judgment that the Defendants' infringement of Claims 1, 4-12, 14, 16 and 18 of the '428 Patent has been willful;

F.    A permanent injunction enjoining the Defendants, and all those acting in concert with them, from further infringement of Claims 1, 4-12, 14, 16 and 18 of the '428 Patent, including making, using, offering to sell, selling, or importing the Defendants' Balers or any product no more than colorably different therefrom;

G.    An award of damages adequate to compensate Twin Pak for the Defendants' infringement, including lost profits and in no event less than a reasonable royalty, together with pre- and post-judgment interest, pursuant to 35 U.S.C. § 284;

H.    An award of enhanced damages, up to and including treble damages, pursuant to 35 U.S.C. § 284;

I.    A finding that this is an exceptional case and an award of Twin Pak's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J.    An award of Twin Pak's costs of suit, and;

K.    Any other further relief that the Court deems just and proper.

### JURY DEMAND

Twin Pak demands a trial by jury on all issues so triable.

15

**Dated**:  August 3, 2026

Respectfully submitted,

**BRENNAN, MANNA & DIAMOND, LLC**

Stephen E. Matasich (0066060)
4518 Fulton Rd. NW; Ste. 202
Canton, OH 44718
330-253-9143
sematasich@bmdllc.com

*Counsel for Plaintiff*

**MICHAEL BEST & FRIEDRICH LLP**

Jon Trembath, #38845*
Robin Jackson, #48959*
Daniel Jozwiak, #55198*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 240-9515
jrtrembath@michaelbest.com
rajackson@michaelbest.com
daniel.jozwiak@michaelbest.com

*\* Pro hac vice applications forthcoming*

*Counsel for Plaintiff*

16